AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States District Court
Southern District of Texas
FILED

SEP 11 2019

David J. Bradley, Clerk

| | |
|---|---|
| United States of America <br> v. <br> LOPEZ, Eluid, YOB: 1991 (USA) <br> RIVERA, Gabriel, YOB: 1984 (USA) <br> SALAZAR-RODRIGUEZ, Jose, YOB: 1987 (MEX) <br><br> *Defendant(s)* | ) ) ) ) ) ) ) Case No. M-19-2186-M |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **09/10/2019** in the county of **Hidalgo** in the **Southern** District of **Texas**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 & 841 | Conspiracy to Possess with the Intent to Distribute and Possession with Intent to Distribute approximately 1.2 kilograms of cocaine. |

This criminal complaint is based on these facts:

(See Attachment I).

☐ Continued on the attached sheet.

Approved by: [signature]
Sworn to before me and signed in my presence.

Complainant's signature

Tyler Klassen, DEA Special Agent
*Printed name and title*

Date: 09/10/2019 10:41 am

Judge's signature

City and state: McAllen, Texas

Peter E. Ormsby, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT 1

1. Since July, 2019, the Drug Enforcement Administration (DEA) has been investigating the cocaine trafficking activities of Eliud LOPEZ (hereafter, LOPEZ) based on information received from a DEA Confidential Source (CS). The CS stated that LOPEZ contacted the CS and stated that LOPEZ wanted to sell two (2) kilograms of cocaine.

2. On July 19, 2019, the CS contacted LOPEZ about the cocaine. During a recorded phone call, LOPEZ stated he would check with another individual to see if there was any cocaine available to sell to the CS and would call the CS at a later date to sell two (2) kilograms of cocaine.

3. On September 10, 2019, LOPEZ contacted the CS and stated that he had two (2) kilograms of cocaine available for sale. On this same date, at approximately 4:30 p.m., the CS received a phone call from LOPEZ. During the call, LOPEZ requested for the CS to meet LOPEZ at the Walmart located in Donna, Texas to sell two (2) kilograms of cocaine to the CS. Agents subsequently established surveillance in the area in anticipation of a meeting between the CS and LOPEZ. Shortly afterwards, agents observed a grey SUV arrive and park in the Walmart parking lot next to the CS. Moments later, the CS notified to agents that the CS was meeting with LOPEZ and that RIVERA was in possession of one (1) kilogram of cocaine.

4. During the meeting between the CS and LOPEZ, agents approached the grey SUV from the rear of the vehicle with a fully marked law enforcement vehicle which was also utilizing emergency lights and sirens. During the approach multiple agents identified themselves as law enforcement. Multiple agents were also wearing police identifiers on their body armor. During the approach, LOPEZ, who was sitting in the front passenger seat of the grey SUV, exited and then absconded from the grey SUV. LOPEZ was apprehended by agents moments later. While LOPEZ absconded from the SUV, agents continued to attempt to make contact with the driver and back seat passenger of the grey SUV. As agents were walking up to the grey SUV, agents observed that Jose SALAZAR-RODRIGUEZ was the driver of the grey SUV. Agents observed SALAZAR-RODRIGUEZ look back at the agents who were approaching the vehicle from the rear. Agents then observed SALAZAR-RODRIGUEZ drive the grey SUV in reverse and accelerate towards a Federal Task Force Officer (TFO) and DEA Special Agent (SA) who were in the process of exiting their government vehicle. Moments later, the grey SUV crashed into the government law enforcement vehicle coming within approximately two feet of striking both the TFO and SA who were out of their vehicle and positioned on both sides of the grey SUV. After crashing into the government vehicle, SALAZAR-RODRIGUEZ drove forward over a large median in the Walmart parking lot and fled area. While fleeing, SALAZAR-RODRIGUEZ struck an unoccupied federal law enforcement vehicle causing additional damage to the vehicle.

5. While SALAZAR-RODRIGUEZ fled from law enforcement, agents maintained constant visual of SALAZAR-RODRIGUEZ's grey SUV. Multiple marked law enforcement vehicles from Texas DPS and local law enforcement agencies followed the grey SUV with emergency lights/sirens and gave the vehicle an ample amount of time to pullover and yield to law enforcement. While the grey SUV drove north from the Walmart, SALAZAR-RODRIGUEZ nearly caused multiple accidents, drove against traffic, drove on the shoulder of the road, and nearly caused a head on collision with a school bus while driving on the wrong side of the road, nearly crashed into responding law enforcement officers, and drove off-road on multiple occasions. After approximately twenty minutes of following and attempting to pull-over the grey SUV, agents observed SALAZAR-RODRIGUEZ and Gabriel RIVERA Jr. exit the grey SUV and run through a farm field towards a neighborhood. Agents pursued both SALAZAR-RODRIGUEZ and RIVERA and observed them run into a shed attached to a nearby house. Soon thereafter, agents apprehended SALAZAR-RODRIGUEZ and RIVERA while they attempted to hide in the shed. During a security sweep of the shed, agents found multiple broken cellphones with the sim cards. The property owner stated that the phones found within the shed did not belong to him.

6. At approximately 7:30 p.m., agents conducted an interview of LOPEZ at the McAllen DEA Office. Prior to initiating the interview with LOPEZ, agents read LOPEZ his Miranda Warnings. Agents read the warnings in the Spanish language, which LOPEZ stated he understood. LOPEZ agreed to speak with agents without an attorney present. During the interview, LOPEZ stated that LOPEZ, SALAZAR-RODRIGUEZ and RIVERA travelled to the Walmart in Donna, Texas to sell two (2) kilograms of cocaine to the CS. LOPEZ stated that SALAZAR-RODRIGUEZ and RIVERA were the source of the cocaine and knew they were participating in a cocaine transaction.

7. At approximately 8:00 p.m., DEA Agents conducted an interview of RIVERA at the McAllen DEA Office. Prior to initiating the interview with RIVERA, agents read RIVERA his Miranda Warnings. Agents read the warnings in the English language, which RIVERA stated he understood. RIVERA agreed to speak with agents without an attorney present. During the interview, RIVERA stated that SALAZAR instructed him to call SALAZAR's wife to notify her that he may be arrested by police. RIVERA stated that SALAZAR knew it was law enforcement that attempted to approach the grey SUV at the Walmart.

8. At approximately 8:40 p.m., DEA Agents conducted an interview of SALAZAR at the McAllen DEA Office. Prior to initiating the interview with SALAZAR, agents read SALAZAR his Miranda Warnings directly from a DEA Miranda Warnings form. Agents read the warnings in the Spanish language, which SALAZAR stated he understood. SALAZAR agreed to speak with agents without an attorney present. During the interview, SALAZAR stated that he knew law enforcement attempted to approach the

grey SUV at the Walmart but he wanted to get away because he has previously been in jail.

9. At approximately 8:10 p.m., DEA Agents conducted an interview of the CS. The CS stated that RIVERA had a brick of cocaine that was wrapped in black tape that he showed to the CS during the meeting at the Walmart parking lot.

10. Upon review of the air support video surveillance footage, agents observed the rear passenger throw an unidentified object out of the window of the vehicle. Agents traveled to the area and found one (1) brick of suspected cocaine wrapped in black tape. The suspected cocaine was transported and weighed by agents at McAllen DEA office. The suspected cocaine weighed approximately 1.2 kilograms. A sample from the brick of suspected cocaine field tested positive for the characteristics and properties of cocaine.